UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MICHAEL O'BRIEN, <br><br> Plaintiff, <br><br> v. <br><br> DAVID WILLIAMS, DIEP NGUYEN, JOHN DOES 1-4 and the CITY OF BOSTON, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

### INTRODUCTION

1. This is a civil rights action for an unlawful arrest and use of excessive and unnecessary force during the arrest. On or about March 16, 2009, Boston police officers attacked Michael O'Brien and nearly killed him because they were angry that he was filming them with his cell phone. Although Mr. O'Brien's actions were lawful, Defendant Boston police officer Diep Nguyen grabbed Mr. O'Brien's cell phone while fellow Boston police officer David Williams threw Mr. O'Brien to the ground. Williams put his arms around Mr. O'Brien's neck and applied pressure with his arm, choking Mr. O'Brien and preventing him from breathing. During the arrest, police officers struck Mr. O'Brien in the head, causing bleeding and a contusion in his brain. Mr. O'Brien has not been able to return to work as a correctional officer nor has he been able to participate with his Massachusetts Army National Guard unit.

2. The City of Boston is sued for its policies or customs of tolerating use of unreasonable and excessive force, failing to address false police reports, and permitting a code of

silence to persist in the police department. These policies or customs permitted Defendant Williams to continue working as a police officer on the street even though the City identified him as an overly aggressive police officer and found that he had filed false police reports.

**JURISDICTION**

3.  This action is brought pursuant to 42 U.S.C. § 1983 and § 1988 and the First, Fourth, and Fourteenth Amendments to the United States Constitution. Title 28 U.S.C. § 1331 and § 1343 provide federal question jurisdiction over all federal claims, and 28 U.S.C. § 1367 provides supplemental jurisdiction over state law claims.

**PARTIES**

4.  Plaintiff Michael O'Brien is a resident of Middlesex County, Massachusetts. At the time of this incident he was a member of the Massachusetts Army National Guard, 20th Special Forces Group, and he was employed as a correctional officer by the Middlesex Sheriff's Office.

5.  Defendant David Williams was at all times relevant to this complaint a duly appointed police officer of the Boston Police Department. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

6.  Defendant Diep Nguyen was at all times relevant to this complaint a duly appointed police officer of the Boston Police Department. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

7. Defendants John Does 1-4 are duly appointed police officers of the Boston Police Department. Their identities are not currently known to the Plaintiff. Their actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. They are sued in their individual capacities.

8. Defendant City of Boston is a duly organized city in the Commonwealth of Massachusetts.

**FACTS**

9. On or about March 16, 2009, Mr. O'Brien's friend Tom moved his car on Hanover Street in Boston's North End to avoid being towed or ticketed. While Tom was moving the car, Mr. O'Brien and a second friend waited on the sidewalk.

10. Tom accidentally hit a BMW that was double-parked on Hanover Street. The accident caused damage to the driver's side mirror and body of the BMW, which was owned by Guy Fils-Aime.

11. Tom approached Mr. Fils-Aime. At Tom's request, Mr. O'Brien moved Tom's car to avoid blocking traffic on Hanover Street. He parked the car a short distance away.

12. Mr. Fils-Aime told Tom that he was a "federal agent" and that they were in trouble. He made a call on his cell phone.

13. Within a short time, Defendant Boston Police Officers David Williams and Diep Nguyen arrived on the scene.

14. Defendants Williams and Nguyen were aggressive, intimidating, and threatening to Tom. When Tom said it was just an accident, Defendant Williams replied with words to the effect of "shut the f--- up and don't open your f---ing mouth until I or my partner speak to you."

While Tom was trying to fill out the accident paperwork, Defendant Nguyen threatened to charge him with leaving the scene of an accident. Tom became nervous so he asked Mr. O'Brien to exchange information. Mr. O'Brien exchanged the information and gave it to Defendant Nguyen. Before the forms were complete, Tom went inside a nearby restaurant.

15. After Mr. O'Brien gave the officers the paperwork, Defendants Williams and Nguyen – who had been hostile not only to Tom but to Plaintiff and their friend – were talking and laughing with Mr. Fils-Aime. Plaintiff went to them and asked for the name of the federal agency that employed Mr. Fils-Aime. Plaintiff took out his cell phone and began to openly record his conversation with the officers and the alleged federal agent. After a short time, Plaintiff moved to the sidewalk on Hanover Street near a Sovereign Bank.

16. After Plaintiff arrived on the sidewalk, Defendants Nguyen and Williams came charging towards him. Plaintiff put both his hands up in front of him while holding his phone to try to record them. Defendant Nguyen said, "Give me the f---n' phone," and grabbed the phone from Plaintiff's hand.

17. Defendant Williams threw Plaintiff to the ground. Williams put an arm around Plaintiff's neck and began choking him by applying pressure to his neck.

18. Mr. O'Brien could not breathe. Defendant Williams said, "Give me your f---n' hand." Plaintiff's right hand was trapped under his body, so he tried to give Defendant Williams his left hand.

19. As Defendant Williams continued to choke him, Mr. O'Brien became incontinent, urinating on himself.

20. Mr. O'Brien thought that Defendant Williams was going to choke him to death.

4

21.  A number of additional police officers arrived. The names and exact number of these Boston police officers are not in any police documents provided in Mr. O'Brien's criminal case and this information is not known by Plaintiff; these police officers are referred to here as Defendant John Does 1-4. Defendant Williams released the choke hold. Plaintiff gasped for air. Mr. O'Brien felt what seemed to be a knee striking his head. Then he felt more blows to his head from one or more Defendants. Mr. O'Brien was not in a position to see the officers as they struck him. John Does 1-4 were acting in concert with Defendants Williams and Nguyen during the assault on Mr. O'Brien.

22.  Despite a duty and opportunity to do so, the officers who did not strike Mr. O'Brien took no action to prevent the unwarranted and unreasonable force used by fellow Boston police officers.

23.  Defendant Williams wrote a police report on behalf of himself and Defendant Nguyen falsely claiming that Mr. O'Brien committed crimes and failing to truthfully report the actions of the police officers. Defendants Nguyen and Williams failed to include in their police report the names of the police officers who assisted them in an effort to shield those officers from responsibility for their actions.

24.  Plaintiff was arrested and charged with disorderly conduct, assault and battery on a public employee – officer Nguyen – and resisting arrest. He was transported to the Area A police station.

25.  At the police station, Mr. O'Brien felt severe pressure in his head and a sharp pain in his chest. He asked for medical help. He was examined by emergency medical personnel at the

police station and brought by ambulance to Massachusetts General Hospital (MGH) for medical treatment.

26. Plaintiff was discharged from MGH with a diagnosis of a closed head injury and choking. After he arrived home, he received a call requesting that he return to the hospital because further review of the computerized axial tomography scan (CT scan) revealed bleeding in his brain.

27. On his return to the hospital, medical staff explained to Mr. O'Brien that the CT scan revealed that he had a subarachnoid hemorrhage and a brain contusion in the right inferior frontal lobe. Additional testing showed that the internal bleeding in the brain stopped. He was prescribed an anti-seizure medication and given instructions regarding post-concussion syndrome.

28. A physical examination showed petechial hemorrhages throughout his face and scalp, which were consistent with a strangulation injury. Mr. O'Brien also had serious contusions on both temporal areas. He suffered bruises and abrasions to his head and ear as well as an elbow injury. A doctor at Burlington Medical Associates wrote that Mr. O'Brien suffered "a fairly grave injury."

29. Mr. O'Brien's first court appearance was on March 18, 2009. He pled not guilty.

30. Mr. O'Brien was suspended with pay from his position as a corrections officer pending an investigation. Then he was fully reinstated subject to being physically able to work.

31. The criminal charges against Mr. O'Brien were dismissed on April 17, 2009, after Mr. O'Brien performed community service.

32. Mr. O'Brien continues to suffer from the brain injury. He has post-concussion syndrome, including headaches, dizziness, and difficulty concentrating. He has been diagnosed with post-traumatic stress disorder. On April 6, 2009, his doctor cleared him to return to light-duty work. He could not work full duty because the job of correctional officer requires him to be ready to prevent physical confrontations and to take other actions that could result in an additional injury. To properly heal, his doctor ordered that he avoid possible risk of further injury to his brain for six months. This required six months of light duty or desk work in the opinion of his doctor.

33. The Middlesex Sheriff's Office would not allow Mr. O'Brien to return to his job because there are no "light duty" assignments that could accommodate a person who could not assist if needed to quell problems at the house of correction.

34. By the time of this incident, Defendant Williams had earned a reputation as an overly aggressive police officer. He had at least seven internal affairs complaints. He had been identified by the department's "early intervention system" as an overly aggressive police officer. On information and belief, the City refused to pay for the programs that were recommended to change his conduct. Thus, despite identifying Defendant Williams as an overly aggressive officer, the City did not take appropriate steps to change his behavior.

35. The Boston Police Department eventually terminated Defendant Williams for his role in the beating of fellow Boston police officer Michael Cox. After Defendant Williams's termination was reversed as a result of an arbitration, the City continued to put him in job assignments where he worked on the street outside of the view of supervising officers despite knowledge of his overly aggressive tendencies. On information and belief, Defendant Williams

continued to behave in an overly aggressive manner as a police officer after he was placed back on regular patrol duty.

36. The Boston Police Department also knew that Defendant Williams had a history of filing false police reports. Before this incident, Williams had received a suspension from the MBTA police force for giving a false report regarding his whereabouts. He also filed a false police report as a Boston Police Officer in 1995. The City found that Defendant Williams was not truthful in his reports about the 1995 incident involving the beating of Boston police officer Michael Cox by other Boston police officers.

37. Police Commissioner Edward Davis is the policymaker for the Boston Police Department.

38. Police Commissioner Davis knew or should have known of officer Williams's reputation for being too physically aggressive and that officer Williams had been found to file false police reports.

39. The City of Boston had a policy or custom of indifference to misconduct by Boston police officers by failing to properly investigate complaints of misconduct and to discipline officers, including Defendant Williams, who used unreasonable or excessive force. The City of Boston also had a policy or custom of tolerating a "code of silence" or "blue wall" in which Boston police officers understood that they were not to report misconduct by fellow police officers.

40. The policies and customs of the City of Boston led Boston police officers including the Defendants to believe that they could violate citizens' constitutional rights by using excessive force, making arrests without probable cause, and even testifying falsely in court

without sanction by the police department. These policies or customs were the moving force behind Defendants' violations of Mr. O'Brien's civil rights.

41.    As a direct and proximate result of Defendants' conduct, Mr. O'Brien suffered physical, emotional, and economic injuries. He was strangled until he nearly suffocated. His physical injuries include a subarachnoid hemorrhage and a brain contusion in the right inferior frontal lobe. He had a concussion with post-concussion syndrome. He suffered physical pain. Mr. O'Brien suffered emotionally and he has been diagnosed with post-traumatic stress disorder. He became irritable and easily startled, and endured humiliation, embarrassment, and other mental and emotional damage as a result of the incident. He has suffered lost earning capacity. He has been unable to return to his work as a correctional officer or with the Army National Guard. He has incurred medical expenses.

**COUNT I**    **42 U.S.C. § 1983 Claim Against Defendants Williams, Nguyen, and John Does 1-4: Unreasonable Use of Force**

42.    The above paragraphs are incorporated by reference.

43.    Defendants Williams, Nguyen, and John Does 1-4, acting in concert, used unreasonable and excessive force against Plaintiff.

44.    Defendants Williams, Nguyen, and John Does 1-4 deprived Plaintiff of a well-established right to freedom from the use of unreasonable force.

45.    Their actions were taken with reckless disregard for Plaintiff's constitutional rights.

46.    As a direct and proximate result of Defendants' actions, Plaintiff suffered the damages described above.

**COUNT II**    **42 U.S.C. § 1983 Claim Against Defendants Williams and Nguyen: Unconstitutional Arrest**

47. The above paragraphs are incorporated by reference.

48. Defendants Williams and Nguyen, acting jointly and in concert, arrested Plaintiff without probable cause, and in retaliation for his exercising his rights to openly record police activity in public places and to ask questions of police officers.

49. These actions deprived Plaintiff of his well-established rights to freedom of speech under the First Amendment to the United States Constitution, and to freedom from arrest without probable cause under the Fourth Amendment to the United States Constitution.

50. As a direct and proximate result of Defendants' actions, Plaintiff suffered the damages described above.

**COUNT III**    **Massachusetts Civil Rights Act M.G.L. C.12, §11I Against Defendants Williams, Nguyen and John Does 1-4**

51. The above paragraphs are incorporated by reference.

52. Acting jointly and in concert, Defendants violated the Plaintiff's civil rights under the Massachusetts Civil Rights Act, M. G. L. ch. 12, §11I, by threats, intimidation, and coercion.

53. As a direct and proximate result of Defendants' actions, Plaintiff suffered the damages described above.

**COUNT IV**    **42 U.S.C. § 1983 Claim Against Defendant City of Boston**

54. The above paragraphs are incorporated by reference.

55. The individual Defendants' violations of Plaintiff's constitutional rights were pursuant to the policies and customs of the City of Boston as described above.

56. As a direct and proximate result of Defendant's actions, Plaintiff suffered the damages described above.

## COUNT V    Tort of Assault and Battery Against Defendants Williams, Nguyen, and John Does 1-4

57. The above paragraphs are incorporated by reference.

58. Defendants committed the common law tort of assault and battery when they threatened and applied unreasonable, unprivileged force while arresting Plaintiff.

59. Defendants acted jointly, and in concert, as described above.

60. As a direct and proximate result of this conduct, Plaintiff suffered the injuries described above.

**WHEREFORE,** Plaintiff requests that this Court:

1. Award compensatory damages;

2. Award punitive damages against Defendant police officers Williams, Nguyen and John Does 1-4;

3. Award the costs of this action, including reasonable attorney's fees; and

4. Award such other further relief as this Court may deem necessary and appropriate.

## JURY DEMAND

A trial by jury is hereby demanded.

RESPECTFULLY SUBMITTED,
For the Plaintiff,
By his attorneys,


/s/ Howard Friedman
Howard Friedman, BBO #180080
**Law Offices of Howard Friedman PC**
90 Canal Street, Fifth Floor
Boston, MA 02114-2022
(617) 742-4100
hfriedman@civil-rights-law.com

/s/ David Milton
David Milton, BBO # 668908
**Law Offices of Howard Friedman PC**
90 Canal Street, Fifth Floor
Boston, MA 02114-2022
(617) 742-4100
dmilton@civil-rights-law.com


Dated: September 24, 2009